HUNTER *v.* HUNTER *et al.*

[90 South. 440.   No. 22299.]

1. WITNESSES. *Physician cannot disclose patient's communications except at patient's instance.*

    Under section 3695, Code of 1906 (section 6380, Hemingway's Code), a physician cannot disclose the communications of a patient except at the instance of the patient.

2. WITNESSES. *Act held not to repeal wholly the privilege communication statute.*

    Section 4872, Hemingway's Code, does not wholly repeal the "privilege communication" statute above; in a proper case the question may arise as to whether it modifies or repeals it to a limited extent.

APPEAL from chancery court of Lauderdale county.

HON. G. C. TANN, Chancellor.

Proceeding by John Hunter and others, kinsmen of John G. Hunter, deceased, against Anthony D. Hunter, to contest decedent's will. Verdict and decree for contestants, and Anthony D. Hunter appeals. Reversed and remanded.

*Baskin & Wilbourn,* for appellants.

The learned counsel cite some authorities from different states on construction of statutes which they say are similar to ours on the question of privileged communication.

We deem it unnecessary to discuss these decisions, because our court has passed upon it, in the case of *McCaw v. Turner et al.,* 88 So. 705, and, therefore, have settled the rule, as we understand it, in our state. We might add that we investigated this matter prior to the decision in the case of *McCaw* v. *Turner, supra,* and the great weight of authority sustains this court in its interpretation of our privileged communication statute.

The learned counsel undertakes to avoid the effect of the case of *McCaw* v. *Turner et al.,* by referring to various statutes of our state on the question with reference to public health and the protection of people as to infectious and contagious diseases. This argument strikes us as unique, but it is hard for us to conceive that it has any application to section 3695 of the Code of 1906, section 6380, of Hemingway's Code, which lays down the Rule of Evidence in the trial of cases.

By reference to these various acts, creating a board of health and conferring upon same certain powers to protect the public health, there is not the slightest intimation that it repealed the Act of 3695, Code 1906, section 6380, Hemingway's Code.

It is not asserted or claimed in the brief of learned counsel that these acts with reference to a board of health by implication repeals the above-cited acts.  And it is useless for us to say that repeals, by implication are not favored in the construction of statutes.  There is neither an express nor implied repeal of the acts under which *McCaw* v. *Turner et al.,* was decided.

Therefore, we submit to the court that these acts have no application whatever to the case at bar.

*S. M. Graham* and *V. W. Gilbert,* for appellee.

As we understand the brief of learned counsel for appellant the only point seriously urged for a reversal of this case is the admission of the testimony of Dr. Rush.  We have in the foregoing part of the argument ignored his testimony, and we think, have demonstrated that the verdict of the jury was inevitable without his testimony being considered.  In discussing this testimony it becomes necessary to examine the legislation on this statute relied upon by learned counsel.  We do this for the reason that as we gather from the opinion in the case of *McCaw* v. *Turner,* 88 So. 705, these statutes were not called to the court's attention and were not considered in that opinion. We feel that these statutes are decisive of the question and shall give a skeleton outline of so much of them as we think necessary for the court to grasp our contention. When the case at bar was tried the decision in the McCaw case had not been handed down by this court.

In 1912 the legislature created a bureau of vital statistics and prescribed the powers thereof.  This chapter 149, Acts 1912, being sections 4869 to 4874 of Hemingway's Code.  Section 2 of the Acts provides that the secretary of the state board of health shall be registrar of vital statistics, and prescribes the method of fixing his salary and his duties.  Section 3 provides for the division of the state into registration districts.

Section 5 (section 4872, Hemingway's Code), is as follows: "That any copy of the records of birth, sickness, or death when properly certified to by the state registrar of vital statistics, to be a true copy thereof, shall be *prima-facie* evidence in all courts and places of the facts therein stated." (This section 5 is the pivotal point in our argument and since we are primarily concerned in this case with a death, we attach hereto a blank form of Death Certificate prescribed by the state board of health.)

Section 6 provides that local registrars shall be paid by the county. Section 7 provides penalties for violations of any rule or regulation of the state board of health and it will be observed that there is a penalty prescribed for false information as well as for a failure to make reports.

Again in chapter 194 of the Acts of 1918, the legislature passed an act for the suppression of venereal diseases and prescribed penalties for violations of the same and also provided that any person suspected of being afflicted with a venereal disease is subject to examination by any representative of the state board of health and a refusal to submit to such examination is a misdemeanor. And section 2 of the act provides full power to isolate, quarantine or otherwise confine, intern and treat such cases.

Chapter 208, Acts 1920, authorizes each county in the state to create a department of health and section 5 of the act provides that the health officers of the county or district shall keep an accurate record of all activities of the department of health for the use of the public, and information to the board of health and make such reports as required by the board of health, etc.

We deem it unnecessary to further call attention to statutes such as tuberculosis, epidemics, etc. The court is already thoroughly familiar with them as well as with rules and regulations of the board of health. Where are the secrets of the sacred relationship between physician and patient? As a doctor well said: We are supposed to report everything but we have our weaknesses for a friend.

The court in the McCaw case (88 So. 705) in speaking of section 6380, Hemingway's Code, say: "The manifest reason and obvious purpose of the statute is to enable a patient to disclose his infirmities to his physician without fear that his feelings will be shocked or his reputation tarnished by their disclosure by the physician without his consent."

But what becomes of the manifest reason and obvious purpose of the statute, when by the subsequent legislation of the state, the physician is compelled to make these very disclosures whether the patient consent or not? And being dead how could he consent? *Cessante ratione, cessat et ipsa lex.*

Dean Wigmore in section 2380, page 3350, Vol. 4, of his great work on Evidence says: "(1) In only a few instances, out of the thousand daily occurring, is the fact communicated to the physician confidential in any real sense. Barring the facts of venereal disease and criminal abortion, there is hardly a fact in the catagories of Pathology in which the patient himself attempts to preserve any real secrecy. Most of one's ailments are immediately disclosed; the few that are not openly ascertainable are at least explained to intimates. Most statistical reckoning is needed (our statutes require it). These facts are well enough known."

He also says in section 2391: "The power of the heir (to waive) may also be conceded, if we remember that the heir, first, is at least equally interested in preserving the ancestor's reputation; and secondly, has an equal moral claim to protect the deceased's property rights from unwarranted diminution. The futility, under the circumstances, of predicating any privilege is the more apparent when (as in the usual case) the issue turns upon the fact of insanity, which is so bruited publicly in the litigation that the pretense of preserving secrecy is a vain one."

How much stronger the reason when our statutes have abolished all pretense of preserving secrecy and makes it *prima-facic* in all courts and places. The only case we

have found in anywise in point is a digest of an opinion in 180 Ind. 282, *Pence* v. *Myers,* wherein it was held that since under the Indiana statutes it was well established that a physician, attendant on a testator at the time of his death, should not be permitted to testify in a will contest as to the condition of a testator's mind, or as to the disease from which he suffered, the cause or duration of illness, and the cause of his death, the admission in evidence of the death certificate of such physician, or a record kept by the county health officer and prepared from the physician's certificate showing these facts or any of them was error.

The court recognized the inevitable conflict between the death certificate and its contents and the statute on privileged communication. In other words the reports and records of the sickness or death of a party and the disease or infirmity with which the patient was afflicted disclosed and discloses confidential communications and is just as much in conflict with the statute on privileged communication as if the doctor testified to it in person. And our statute provides, as evidently the statutes of Indiana did not, that the records of the state board of health, disclosing these infirmities, is competent evidence in all courts and places. In short, admitting the records of the state board of health showing these things, and precluding the physician from testifying, violates two fundamental rules of law: First, that you cannot do indirectly that which you cannot do directly; and second, the right of confrontation of the witnesses. The right to confront the witness and to cross-examine him is one that the legislature could not destroy, if it wishes to. It would be the sheerest pedantry to argue this fundamental law, that all English-speaking peoples know by heart.

If it be held that the physician's records and certificates are competent in evidence in all courts and places and *prima-facie* of the facts therein stated and then hold that the physician cannot be called for cross-examination or for direct examination is to held that the legislature in-

tended to invade this constitutional right and would ren-
der the statute unconstitutional and void. This the legis-
lature did not intend. It is merely *prima-facie;* therefore
subject to attack, and the first attack should be by ex-
amination of the physician himself; indeed, he would be,
in most instances, the only possible source through which
the truth or falsity of it could be established or refuted.

Let us look for just a moment at the peculiar wording
of our privileged communication statute: "All communi-
cations made to a physician or surgeon by a patient . . .
are hereby declared to be privileged and such physician or
surgeon shall not be required to disclose the same in any
legal proceeding except at the instance of the patient."

Without pausing to consider whether a proceeding to
probate a will is a legal proceeding, it will be seen from
the statute that the physician is not made an incompetent
witness. Take for instance the statute of Missouri: "The
following persons shall be incompetent to testify: . . .
A physician or surgeon concerning any information which
he may have acquired from any patient," etc.

The supreme court of that state, in one of the ablest
opinions we have seen, held that the physician was a com-
petent witness in this character of cases. *Thompson* v.
*Ish,* 99 Mo. 160; 17 A. S. R. 552, at page 558, et seq.
Iowa held likewise under a similar statute. *Winters* v.
*Winters,* 102 Ia. 53, 63 A. S. R. 428, at page 430, et seq.
Likewise Nebraska. *In re Gray,* 88 Neb. 835; Ann. Cas.
1912B, 1037, at page 1038, et seq., and note appended.
Also Minnesota. *Olson* v. *Court of Honor,* 100 Minn. 117;
117 A. S. R. 676, at page 682, a splendid opinion by Mr.
Justice START.

In Volume 23 A. E. Ency. of Law (2 Ed.), at page 88 it
is said: "It has been held that in disputes between parties
all of whom claim under a decedent as heirs at law, de-
visees, legatees, or personal representatives, either party
may call the attending physician of the decedent as a wit-
ness, and the rule of privilege does not apply."

The only authority cited *contra* are two California cases, and in the case of Matter of Flynt the supreme court of California based its opinion on the same language, nearly, as did our court in the McCaw case. 100 Cal., 391. See also the masterly treatment of this entire subject by Dean Wigmore in Volume 4, section 2380 et seq.; 4 Jones on Evidence, pages 5-11, par. 761; 5 Chamberlain on Evidence, pages 5, 309, par. 3705-A.

Authorities could be multiplied, but we submit that the foregoing establishes the great weight of authority in favor of the right of the contestants or proponents of wills to introduce the attending physician even under statutes that make him no exception in favor of the heirs or legatees as shown in the foregoing citations.

If all the courts we have cited so held under terms of their statutes unmodified or restricted by any subsequent legislation, how much stronger are the reasons for permiting the testimony of the physician in this state where the public policy and statutes of the state have destroyed the confidential nature of the relationship, and requires the physician to disclose the very information that the privileged communication statute may have prohibited him from doing.

HOLDEN, J., delivered the opinion of the court.

This is a contest of the will of John G. Hunter, deceased, by the appellees, kinsmen. After the will was probated in common form the appellees filed a *caveat* upon which an issue of *devisavit vel non* was submitted to a jury, which found in favor of the contestants upon the ground that the testator was of unsound mind and mentally incapable of making a will at the time it was executed. From this verdict and decree this appeal is prosecuted.

At the trial testimony was submitted, by both sides, as to the testator's mental capacity; there being a conflict in the proof on this issue before the jury.

The contestants were permitted by the court, over the objection of the proponent, to introduce the testimony of Dr. J. H. Rush, the physician in charge of the hospital in which the testator was a patient under his care for about two weeks immediately prior to his death. The testimony of Dr. Rush was, in substance, that the deceased Hunter was a patient in his hospital for several weeks before he died; that the deceased was under his supervision and treatment, which·enabled him (the doctor) to know the physical and mental condition of the deceased; and that the deceased, at the time of the execution of the will which was done while in the hospital a few days before his death, was afflicted with *"senile dementia,"* and that the testator was not mentally capable of making a will.

The lower court also granted an instruction to the contestants directing the jury to consider the testimony in the case, given by Dr. Rush, with reference to the testator being afflicted with *"senile dementia,"* at the time of the execution of the will, and that in determining the question of mental capacity of the testator they should consider this evidence given by Dr. Rush. The instruction had the effect of calling special attention to the testimony of Dr. Rush with reference to the condition of the testator as to *"senile dementia."*

The court erred in admitting the testimony of Dr. Rush; it was a privileged communication of the patient under his charge, which could not be disclosed, except at the instance of the patient. Section 3695, Code of 1906 (section 6380, Hemingway's Code) ; *Y. & M. V. R. Co.* v. *Messina,* 109 Miss. 143, 67 So. 963; and *McCaw* v. *Turner,* 88 So. 705.

We think the McCaw case, *supra,* has entirely and finally settled the question as to the admissibility of testimony which discloses privileged communications between physician and patient; that is, so far as the privileged communication statute, *supra,* is concerned.

But the argument is made here by the appellees that this privileged communication statute has been repealed by

implication by the enactment of the law creating a Bureau of Vital Statistics, said law being sections 4869 to 4874, Hemingway's Code. Section 4872 (section 5) of this law provides:

"That any copy of the records of birth, sickness or death, when properly certified to by the state registrar of vital statistics, to be a true copy thereof, shall be *prima-facie* in all courts and places of the facts therein stated."

The point made by counsel for appellees does not arise in the instant case, because no certificate of the registrar showing the death or sickness of the testator was offered as evidence in the case. Should a case arise where proof by certificate under this act is offered in evidence, we will then determine to what extent, if any, the act repeals the said section 3695, Code of 1906, section 6380, Hemingway's Code, known as the "privileged communication" statute.

So far as the question is before us in the present case, we hold that the privileged communication statute is not repealed by the Vital Statistics Act, unless it is repealed to the extent that a registrar's certificate made up from statistics or information obtained from the attending physician of the patient may be introduced in evidence to show the character of sickness or cause of death of the patient. But we do not decide at this time how far and to what extent the recent act modifies or annuls the former statute, because the question does not properly arise in this case.

The appellee contends further that the judgment ought to be affirmed because the other proof for the contestants in the case was sufficient to sustain the verdict of the jury and that the verdict would have been for the contestants even though the testimony of Dr. Rush had been excluded and the instruction directing the attention of the jury to the testimony of Dr. Rush as to *"senile dementia"* of the testator had not been given.

We are unable to agree with counsel in this regard. Our view of the record is that the strong testimony of Dr. Rush was vital, and with the instruction of the court pointing

the jury to it we are led to believe that the jury was substantially influenced by this testimony in reaching its decision.

For the reasons given, the decree of the lower court is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*