LIFE & CASUALTY INS. CO. *v.* WALTERS.

(Division B.   Nov. 29, 1937.)

[177 So. 47.   No. 32906.]

S. M. Graham, of Meridian, and A. S. Scott, of Laurel, for appellant.

Leonard B. Melvin, of Laurel, for appellee.

Argued orally by **S. M. Graham,** and **A. S. Scott,** for appellant, and by **Leonard B. Melvin,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action against appellant in the circuit court of Jones county on a life insurance policy issued by appellant to the daughter of appellee, Mrs. Naomi Walters Ainsworth, in which appellee was named as beneficiary. The policy was in the sum of $500. There was a trial resulting in a verdict and judgment in appellee's favor in that amount. From that judgment, appellant prosecutes this appeal.

The policy provides that there shall be no liability under it "if insured is pregnant at date of issue of policy and death results from such pregnancy." Appellant's defense was that insured was pregnant when the policy was issued, and that death resulted from such pregnancy. Appellant contends that it was entitled to a directed verdict as requested. We are of the opinion that the issue was one for the jury. We reach that conclusion from the following considerations: In appellee's declaration it is averred that the policy was issued and took effect on the 30th day of November, 1936. The evi-

dence showed that the original receipt for the first four weekly premiums was dated November 11, 1936. In the trial appellee proceeded upon the theory that the policy took effect on that date, while appellant sought to hold appellee to the date set out in the declaration. On another trial, which must follow, that will probably not be an issue in the case.

The insured died on the 10th day of March, 1937, in the charity hospital at Laurel. Her death, therefore, resulted three months and ten days after the 30th day of November, 1936, and one day short of four months from November 11, 1936. Appellee made proof of the death under oath to appellant, as required by the policy. In the proof she stated that puerperal sepsis was the cause of death. Miss Holifield testified that she was a student nurse in the hospital, and on the 4th day of March, six days before the insured died, she (the insured) was delivered of a still-born male child; that she was present at the time of the birth and saw the child; that her best recollection was that it had hair and finger nails, and was a male. Dr. Golden testified as an expert on behalf of appellant that a fetus does not develop hair and finger nails until after five months of gestation, and that puerperal sepsis is a poison following childbirth alone. Therefore, taking as established facts that which the testimony of Miss Holifield and Dr. Golden tended to prove, in connection with appellee's proof of death, appellant would have been entitled to a directed verdict; that course could not be pursued, however, because of the uncertainty in Miss Holifield's testimony. She did not state positively that the child had hair and finger nails, but that she had that impression.

Appellee contends that the admission of Miss Holifield's testimony was error; that it violated our privileged communication statute, section 1536, Code of 1930. This position is based on the following facts, which are undisputed in the record: Miss Holifield was a mere stu-

dent nurse in the hospital. The superintendent of the hospital requested her, together with one or more student nurses, to prepare the room for the insured's confinement. They did so. Miss Holifield remained through the confinement. Dr. Crocker attended the insured. Miss Holifield was neither his employee nor assistant; she was merely present after the preparation of the room. What she learned, therefore, was not privileged; she was a competent witness. Mississippi Power & Light Co. v. Jordan, 164 Miss. 174, 175, 143 So. 483. In that case the court approved the principle as laid down by Wigmore in a footnote to paragraph 2382 of his work on Evidence, volume 5 (2 Ed.), that: ''A nurse as an independent person, receiving medical confidence as such, is not within the privilege.''

Appellant complains of the action of the court in refusing the following instruction: ''The court instructs the jury that the failure of the plaintiff, if any, to introduce expert testimony or her failure to throw any light on the issue as touching the pregnancy of her daughter insured, if any, the jury may consider that such testimony, if offered by the plaintiff, would have been adverse to plaintiff's interest.'' Its contention is based on the decision of one of the questions involved in Robinson v. Haydel, 177 Miss. 233, 171 So. 7. In that case Dr. Hewes was Robinson's physician; what he learned, therefore, of Robinson's physical condition was privileged under the statute. At the trial Dr. Hewes was available to Robinson as a witness; he failed to introduce him. At the instance of Haydel, the court instructed the jury that if that were true it might create a presumption that if he were introduced as a witness his testimony would be unfavorable to Robinson. The court held that the instruction was proper. We are of the opinion that there was no error in refusing the instruction here; it was materially different from that involved in the Robinson Case. It is too general in the

first place, and in the next place it leaves out entirely the question of whether the expert testimony was available to appellee.

The court gave an instruction for appellee submitting to the jury, among other things, the question of whether the pregnancy existed at the time of the giving of the original premium receipt which was on November 11, 1936, and gave one for appellant submitting to the jury, among other questions, whether the pregnancy existed on the 30th day of November, 1936. Appellant contends that these instructions are in conflict and calculated to mislead the jury. We think the contention without merit. If appellant's testimony be true, the insured was pregnant not only on November 30, 1936,.but also on November 11, 1936, when the original premium receipts were dated.

Appellant offered in evidence certified copies from the records of vital statistics in the office of the State Board of Health, showing the required facts with reference to the death of the insured and the birth of the child. They were ruled out by the court on the ground that their admission would violate the privileged communication statute. Section 1536, Code of 1930. These records consisted of Dr. Crocker's reports to the department of vital statistics; in one he stated that the insured died on March 10, 1937, of puerperal sepsis, and in the other that the child was stillborn "about 6 mo. period of gestation." The privileged communication statute is in this language: "All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice, are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding, except at the instance of the patient."

Section 4908, Code of 1930, a part of the chapter on Health and Quarantine, is in this language: "Any copy of the records of birth, sickness or death, when properly certified to by the state registrar of vital statistics,

to be a true copy thereof, shall be prima facie in all courts and places of the facts therein stated.''

The privileged communication statute, had been in force many years before the latter statute ·was. adopted. Statutes in pari materia, although apparently conflicting, should, if possible, be construed in harmony with each other to give effect to each. Greaves v. Hinds County, 166 Miss. 89, 145 So. 900; Clarksdale Building & Loan Association v. Board of Levee Commissionrs, 168 Miss. 326, 150 So. 783. Where a general statute, if standing alone, would include the same matter as a special statute, the special statute will ordinarily be regarded as a qualification of the general statute. Greaves v. Hinds County, supra.

By the adoption of section 4908, the Legislature intended to except from the operation of the privileged communication statute the vital statistics records. These two statutes must be construed together. The purpose of the privileged communication statute was to protect confidential matters growing out of the relation of physician and his assistants and patient. When such are required by law to be made a public record, there is no longer any reason for their privacy. The records of the office of vital statistics are accessible to the public; they are no longer confidential. So construing the two statutes, the court was in error in excluding the records in question. This question was left open in Hunter v. Hunter, 127 Miss. 683, 90 So. 440, 441. The court said in that case that: ''The privileged communication statute is not repealed by the Vital Statistics Act, unless it is repealed to the extent that a registrar's certificate made up from statistics or information obtained from the attending physician of the patient may be introduced in evidence to show the character of sickness or cause of death of the patient.''

We are of the opinion that appellant's other contentions. are without merit.

Reversed and remanded.