LIFE & CASUALTY INS. CO. *v.* WALTERS.

(In Banc. Nov. 25, 1940.)

[198 So. 746. No. 34303.]

(In Banc.   Feb. 24, 1941.)

[200 So. 732.   No. 34303.]

**A. S. Scott,** of Laurel, for appellant.

Leonard B. Melvin, of Laurel, for appellee.

Argued orally by **A. S. Scott**, for appellant, and by **Leonard B. Melvin**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Appellant appeals here from an adverse judgment in favor of appellee, Mrs. Lena Walters, the beneficiary in a life insurance policy.

This case has been before this court on a former appeal, 180 Miss. 384, 177 So. 47, 48, and was reversed and remanded because the court below erroneously excluded certificates from the records of vital statistics of the State Board of Health showing the facts with reference to the death of the insured, and of the birth of her stillborn child. The insurance company defended on the ground that the policy provided that it was not liable under its contract "if insured is pregnant at date of issue of policy and death results from such pregnancy."

The appellee introduced the contract of insurance, proved that it was in force at the date of the death of the insured, and that she had been named beneficiary by her daughter, Mrs. Naomi Walters Ainsworth. This daughter died on March 10, 1937, the cause of her death being puerperal sepsis, as disclosed by the proof of death sworn to by Mrs. Lena Walters. The policy of insurance was in force at her death, and was dated November 30, 1936.

The insurance company offered a certificate, duly certified to by the Vital Statistics Department of the State Board of Health, which disclosed that on March 4, 1937, Mrs. Naomi Walters Ainsworth gave birth to a stillborn male child. This certificate was made by Dr. O. B.

Crocker, the attending physician. Therein, there was printed this query: "If stillborn, period of gestation," and the physician's reply thereto was "about 6 mos."

For the appellant, Dr. Golden, as an expert physician, testified that puerperal sepsis was caused by childbirth, and also made this positive statement: "Lawyer, you can't have puerperal sepsis without having the delivery, that is what I want to get over to the court. When you have puerperal sepsis, you have got to have pregnancy and delivery before you have puerperal sepsis."

On cross-examination, the physician stated that the disease, puerperal sepsis, was the prime cause of death, but was due to the pregnancy and birth of a child. In that view, the disease—blood poisoning—would occur by infection after or at the time of or on the occasion of a birth of a child.

In rebuttal, the beneficiary testified that her daughter, the insured, visited her on December 10, 1936, and on that date the insured was menstruating. That, thereafter, on December 21, 1936, the insured was married to Velma Joe Ainsworth.

In surrebuttal, the expert physician testified that some women menstruate after pregnancy, but that under normal conditions women stop menstruating after pregnancy.

No witness, who was present on March 4th and had seen the stillborn child, was offered or testified. Miss Holifield, mentioned in the former opinion, did not testify on this trial. The motion for a new trial discloses that "she had gone back" on her testimony in the first trial. We do not think the appellant was entitled to a peremptory instruction in this case.

The defense relies on the certificate of the attending physician, which stated that the foetus of the stillborn child was of about six months gestation. Therefore, from the date the policy was issued, November 30, 1936, to March 4, 1937, there intervened only three months and four days, and consequently the insured must have been

pregnant about six months, or at least more than five months.

Appellant relies upon Section 4907 of the Code of 1930, which provides as follows: "Certificates of registrar to be prima facie evidence.—Any copy of the records of birth, sickness or death, when properly certified to by the state registrar of vital statistics, to be a true copy thereof, shall be prima facie in all courts and places of the facts therein stated."

Appellant relies upon this certificate and the statement that the period of gestation of the stillborn child was about six months. "About" means near to, and is to some extent uncertain and indefinite; and, in addition to that, the evidence that the insured was menstruating on December 10, 1936, after the date of the issuance of the policy and before her marriage on December 21, 1936, created an issue of fact for the jury. The jury had a right to indulge the presumption of chastity and honesty in the deceased female. We have not overlooked the fact that the physician testified that normal women do not menstruate after becoming pregnant. The exact time of utero-gestation can never be ascertained with certainty. See Herzog, Medical Jurisprudence, Sec. 956.

The burden was upon the appellant to show that the insured was pregnant on the day the policy was issued; and we are of the opinion that this was a question for the jury in the light of the fact that the certificate was only prima facie evidence of the facts therein contained.

The court erred, in our opinion, in excluding Rule 8 of the State Board of Health, the material fact of which was in these words: "Provided that a certificate of birth shall not be required for a child that has not advanced to the fifth month of utero-gestation."

Section 4907 authorized the promulgation of such rules as to births. This rule tended to explain what the reporting physician meant by the use of the words "about six months" as to the period of gestation of this stillborn child. He was not required to report this birth unless

this child had advanced to the fifth month of gestation. The jury might infer that the physician would not do a vain thing by reporting such births which were of less than five months' period of gestation.

The court gave these instructions to the jury for the appellee:

"The court instructs the jury for the plaintiff that the burden of proving that the insured was pregnant at the time of the issuance of said policy and that her death was the direct or proximate cause of said pregnancy, is upon defendant and unless you believe from a preponderance of the evidence that insured was pregnant and said death resulted from said pregnancy, it is your sworn duty to find for plaintiff."

"The court instructs the jury for the plaintiff that the policy and receipts herein sued on together constitute the entire contract between insured and defendant company, and the burden of proving insured pregnant is upon defendant company and unless you believe from a preponderance of the evidence that insured was pregnant at the date of the original receipt, and such pregnancy resulted in the death of insured, it is your sworn duty to find for plaintiff."

The court gave this instruction to the jury for appellant: "The court instructs the jury for the defendant that it will be your sworn duty to find a verdict for the defendant, Life & Casualty Insurance Company, if you find from the preponderance of the testimony that the insured, Mrs. Naomi Walters Ainsworth, gave birth to a stillborn child which had been conceived for more than three months and four days before its birth."

It will be readily observed that the instructions given by the court for appellee are in hopeless conflict. The first quoted instruction for appellee was unintelligible because it is inconceivable that death would cause pregnancy. By the second instruction, the court submitted two issues of fact to the jury: (1) That the death of the insured

was the direct and proximate result of pregnancy of the insured; and (2) that insured was pregnant at the date of the receipt for dues.

By the instruction for appellant, the jury was limited to the issue of fact as to length of time insured was pregnant. In other words, the last instruction eliminated from the jury the issue of fact as to pregnancy having resulted in her death.

There was no issue in the evidence that on March 4, 1937, the insured was pregnant; and there was no conflict in the evidence that she died from puerperal sepsis. "Puerpera" is defined in Webster's New International Dictionary, 2nd Edition, "A woman in childbirth, or in the period succeeding it." "Puerperal" is defined therein as "Of or pertaining to childbirth; as, a puerperal fever." There is no room to argue but that the insured died as a result of her pregnancy. Therefore, the court erred in submitting that issue to the jury for appellee. We have heretofore determined that it was proper to submit the issue of whether or not she was pregnant on the date the policy sued on herein was issued. We think from the evidence in this case the policy sued on shows on its face that it was issued on November 30, 1936, and whether or not the insured obtained some rights by the several receipts issued prior to that time is of no consequence here. We think the quoted instruction granted to the appellant was correct, and therefore the quoted instructions granted the appellee were not. They were in such hopeless, irreconcilable conflict as to demand a reversal of this case. For the reasons given above, let this case be reversed and remanded.

Reversed and remanded.

### On Motion.

**Griffith, J.**, delivered the opinion of the court on motion.

The judgment obtained by appellee in the trial court was reversed and the cause remanded on November 25, 1940, 198 So. 746. A previous judgment in favor of ap-

pellee was reversed on November 29, 1937, 180 Miss. 384, 177 So. 47. The present motion is for an order upon the Clerk to send down mandate on an affidavit by appellee in forma pauperis in accordance with the ruling promulgated by this Court on June 12, 1939, in Jackson County v. Meaut, 185 Miss. 235, 189 So. 819.

When the first judgment was reversed and the costs taxed against appellee, the costs were not paid by appellee, who had sued in the trial court upon a pauper's affidavit, and an execution was issued against the successful appellant, who paid the costs on March 16, 1938. On December 28, 1939, soon after the publication of the opinion in the Meaut case, appellee filed a pauper's affidavit in this Court with a motion to send down the mandate, without payment of the costs by appellee as required by Rule 29 of this Court; and the mandate was sent as demanded. Now, as already stated, there is another motion and another pauper's affidavit demanding that the mandate be sent down from the second appeal.

To the present motion counsel for the successful appellant has responded that if for the second time the appellant is required to pay the costs, with no responsibility whatever on appellee in respect thereto, it would have been better, so far as out of pocket expenses are concerned, for appellant, the defendant in the trial court, to have at once paid the amount sued for to wit, $500, however unjust the demand rather than take the expense of litigation which these erroneous trials have imposed upon appellant, and which appellant alone must pay, without any fault on appellant's part; and appellant suggests that if appellee shall, as in the past, continue to procure judgments under erroneous records, as to which she has no responsibility in costs, there will be no discernible end to the costs which will be wrongfully imposed upon appellant, so that if appellant finally wins its case on the true merits, it will have lost it in costs, as a result of the errors brought into the trials by its opponent proceeding in forma pauperis.

It must have been considerations such as above mentioned, along with others, which caused this Court to promulgate on November 14, 1904, 83 Miss. XXVII, its Rule 30, reading as follows: ".When costs are awarded in this court against the appellee, and there shall have been a return of nulla bona to an execution against him, and the costs shall be paid by appellant, no mandate shall issue upon the application of the appellee until he shall pay into the court, for the use of appellant, the costs paid by him." This is the exact language of Rule 29 of the revised rules of 1916 in force at this date.

The rule was originally promulgated by this Court when its membership was composed of men unsurpassed in legal ability in the judicial history of this State. There existed then, as it had existed for years theretofore, the statute, now Section 663, Code 1930, which allowed any citizen of this State to commence any suit or action, or answer any rule for security for costs in any court, by suing in forma pauperis: and there was also before the members the case, Woods v. Davidson, 57 Miss. 206, in which it was held that a person suing in forma pauperis could not appeal without bond, the Court saying: "Construing the two sections together, it must be held that the latter [the pauper statute] applies only to the court in which the suit is commenced, and authorizes its prosecution to final judgment there."

Plainer language could hardly have been used to the effect that the pauper statute applies only to a court of original jurisdiction, and not to courts of appeal. And when, in 1904, the Court adopted the rule which we are now discussing, there was also before it the case Mobile & O. R. Co. v. Watly, 69 Miss. 475, 12 So. 558, construing Section 1442, Code 1880, in substantially the same language as Section 3406, Code 1930, which is the section which lies back of old Rule 30, and its continuation as the present Rule 29.

The cited statute dealing with Supreme Court costs made no exception, the Watly case made none, the quoted

rule made none, and the first time an attempt was urged to get down a mandate on a pauper's affidavit was in 1933 in DuBois v. Thomas, referred to by McGowen, J., in his dissenting opinion in the Meaut case, wherein he pointed out that the case was fully briefed and the motion was denied on June 12, 1933, but, unfortunately, as it has turned out to be, without a written opinion: Then came the Meaut case holding to the contrary in 1939.

Since the rendition of the majority opinion in the Meaut case, incidents have come to our notice which in themselves had caused some of us to be shaken in our confidence in the correctness of that opinion as well as in its wisdom and salutariness, and the situations such as mentioned by appellant and above noted is only one among the observed incidents. The majority opinion in the Meaut case departed from the rule and practice, the wise and salutary rule and practice, which had been consistently adhered to for sixty years, and, so far as we can find, from the beginning of the history of the state. It brushed aside the decision of the Court on the same point rendered only six years before; and we have determined, upon a mature reconsideration of the Meaut case, to acknowledge our error in it; to overrule the majority opinion and to adopt the dissenting opinion therein—to return to the previous time-tested and correct rule, announced in Woods v. Davidson, that the statute dealing with suits in forma pauperis applies only to courts of original jurisdiction, and not to courts of appeal.

Motion overruled.